## Barth *v.* Lackawanna and Wyoming Valley R. R. Co., Appellant.

Argued December 5, 1932. Before FRAZER, C. J., SIMPSON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Clarence Balentine,* of *Kelly, Balentine, Fitzgerald & Kelly,* for appellant.—Plaintiff was negligent in failing to warn her husband of that which she must have plainly seen under the testimony in the case: Weber v. Ry., 300 Pa. 351; Joseph v. Ry., 294 Pa. 315; Grimes v. R. R., 289 Pa. 320; Miller v. R. R., 299 Pa. 63; Lessig v. Transit Co., 270 Pa. 299.

*R. L. Levy,* with him *Leon M. Levy,* for appellee.—Calculations based on length of view and speed of appellant's car would warrant the inference that appellant's car came into view after appellee had looked and in the length of time between the starting of the automobile and the collision.

A guest in an automobile is not held to the same rule as that governing the rights of pedestrians.

OPINION BY MR. CHIEF JUSTICE FRAZER, January 3, 1933:

Plaintiff was a guest in an automobile driven by her husband, Elmer Barth, at the time of a collision with an electric car of defendant company at a grade crossing. She sued in trespass to recover damages for her injuries received and for the death of her husband, which re-

sulted from the accident. The jury awarded plaintiff $5,000 for her injuries but allowed no compensation for the death of her husband. Defendant has appealed from the refusal of the lower court to enter judgment non obstante veredicto and argues that the case falls within the incontrovertible physical facts rule which would preclude sustaining judgment for plaintiff.

The accident occurred about 11:30 P. M. on the night of March 6, 1931, at the point where River Street intersects the Laurel Line of defendant's railway in an outlying section of the City of Scranton. Barth was driving his closed sedan automobile in a northerly direction on River Street as defendant's car approached from the west. Plaintiff and her husband, who had been married only a few weeks, were occupying the front seat, the driver being on the left. Both were familiar with the locality and knew the crossing. It was a clear night.

Viewing the testimony in the light most favorable to plaintiff, as we must on appeal from refusal to award judgment n. o. v., the fatality would appear to have occurred as follows: The automobile in which plaintiff was riding was being driven at 12 or 15 miles an hour and defendant's railway car was approaching the intersection at "full speed," 45 or 50 miles an hour. The headlight on the electric car was dimly burning, as were also the lights within the car. The shades on the partition separating the front platform from the passengers' compartment were drawn, rendering the headlight the only part of the car visible as it approached River Street at approximately a right angle. The speed of the trolley was not retarded before reaching the crossing, and after the collision the car ran approximately 300 feet before coming to a standstill. No warning of its approach was sounded by whistle or bell.

Plaintiff's husband stopped his automobile fifteen feet from the nearest rail of defendant's double track crossing. At this point both he and plaintiff looked and listened for an approaching car before proceeding. The

automobile was struck on the left side at the front as it reached the rail and was practically demolished, the force of the impact carrying the machine fifteen feet off the road and turning it completely around. Plaintiff was seriously hurt and her husband died soon after the collision as a result of his injuries.

Appellant contends that the incontrovertible physical facts show that a prudent person looking from the crossing must have seen the approaching trolley car for a sufficient length of time to avoid injury, and that plaintiff is convicted of contributory negligence either in not having looked to see the car or in having failed to warn the driver of its approach. This argument cannot be sustained from the evidence, for the reason pointed out by the court below, that "it was only at a point 247 feet west of the crossing that the track was straightened out so that the rays of the headlight would have been turned straight ahead," and there is testimony that a day after the accident an oncoming car could not be seen at a distance of more than 200 feet from the crossing. The evidence indicating that, from a point 15 feet south of the crossing, an oncoming car could be seen for a greater distance, was not based upon observations made at the time of the accident or shortly thereafter, and is not accurate in view of the fact that shrubbery on defendant's right-of-way was cut down following the accident to increase the distance at which a car would be visible from the highway. Furthermore, these greater distances (none over 550 feet) referred to the view obtainable on a clear day, whereas the accident here in question occurred at night.

Because of the curve in the track and the fact that the light rays from the headlight of the approaching trolley would not be thrown in the direction of the crossing until a point 247 feet west of it was reached, there is no reason to believe that plaintiff should have seen the trolley car before it arrived at this point. Traveling at the rate of 50 miles an hour, defendant's car would traverse

the distance from the end of the curve to the crossing in three and a fraction seconds. It is obvious this is not sufficient time for a stopped automobile to start and clear the tracks safely. Plaintiff's husband "having fully complied with his duty to have his machine under such control as to be able to guard against injury from a street car approaching the crossing at a reasonable speed and under proper control, was not bound to anticipate negligent operation of the [street] car (Knobeloch v. Pittsburgh, Harmony and New Castle Ry. Co., 200 Pa. 140; Schaeffer v. Reading Transit Co., 302 Pa. 220) but was entitled to rely upon an exercise of due care by defendant: Weschler v. Buffalo & Lake Erie Traction Co., 293 Pa. 472. It was the motorman's duty to have his car under such control as would probably prevent a collision......and......he was required, when he rounded the curve and came in sight of the crossing, to be able to come to a complete stop, if necessary to avoid hitting a vehicle on the highway:" Ehrhart v. York Rys. Co., 308 Pa. 566, 572.

Assuming that Barth, from his position in the driver's seat, could have seen the Laurel Line car in time to stop his machine again, failure to do so would not convict the wife of contributory negligence, as she had fulfilled her duty and it was not necessary for her to exercise the same degree of vigilance as required of the driver. Being a guest in the car, she was "not bound to keep a continuous lookout on the highway after the driver had stopped, looked and listened:" Joseph v. Pittsburgh and W. Va. Ry., 294 Pa. 315, 322; Minnich v. Easton R. Co., 267 Pa. 200; Loughrey v. P. R. R. Co., 284 Pa. 267. "None of the cases goes so far as to hold the passenger is bound to exercise the same degree of care in observing the roadway ahead of him as is required by the driver of the vehicle:" Azinger v. P. R. R. Co., 262 Pa. 242, 250. See also Kilpatrick v. P. R. T. Co., 290 Pa. 288, and cases cited therein.

We cannot agree with appellant's contention that the photographs of the wrecked automobile and the damaged railroad car show conclusively that the former collided with the latter after the trolley car had reached the crossing, and that consequently the failure to sound the whistle was not the proximate cause of the collision. In our opinion the photographs support plaintiff's testimony and tend to show that the auto in which she was riding was struck immediately upon reaching the crossing.

The judgment of the court below is affirmed.