Foley et vir *v.* Reading Company, Appellant, et al.

Argued November 30, 1943. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*Henry R. Heebner,* with him *Wm. Clarke Mason,* for appellant.

*George Demming,* for appellees.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 14, 1944:

Plaintiffs, husband and wife, brought this action in trespass against the Reading Company and the Pennsylvania Railroad Company to recover damages arising out of injuries sustained by the wife when a northbound Reading train, on which she was a passenger, was derailed just north of Manayunk Station in Philadelphia on April 26, 1941. The trial court directed a verdict for the Pennsylvania Railroad Company. The jury rendered verdicts totaling $3,850.00 in favor of the plaintiffs against the Reading Company. From refusal of the court below to grant this defendant's motion for judgment n. o. v. and motion for a new trial, defendant appeals.

On appeal from refusal to grant judgment n. o. v., we must view the testimony in the light most advantageous to the plaintiffs, and resolve all conflicts in their favor: *Barth v. Lackawanna and Wyoming Val. R. R. Co.,* 310 Pa. 168, 165 A. 251; *Boyle v. Penna. R. R. Co. et al.,* 346 Pa. 602, 31 A. 2d 89. The injured plaintiff and other passengers testified that as the car in which they were riding was about to pass beneath an overhead bridge, upon which the tracks of the Pennsylvania crossed the Reading right of way, there was a violent jolt, followed by a rocking and bumping for a distance of thirteen hundred feet when another violent jolt turned the car on its side. Several daily commuters as well as the injured plaintiff testified that, prior to the accident, the train was going at an unusually high rate of speed compared with the trains in which they had ridden. In addition, several passengers stated that they were unable to read because of the rocking and rolling of the train. Moreover, the fireman, along with the passengers, asserted that the speed did not slacken after the first jolt but was sustained until the train finally toppled over 1342 feet beyond that point. Although there are very slight curves first to the left and then to the right in

the vicinity of the accident, it is not disputed that the engineer had a clear view of the track for 1721 feet up to the point where the first jolt occurred.

Defendant introduced evidence to show that its equipment was in good working order and its tracks and roadbed adequately inspected and safe. It is the theory of the defendant that the accident was caused by thin boards thrown down upon the track from the Pennsylvania Railroad station, which was adjacent to the overhead bridge and situated high above on the east bank retaining wall. Defendant offered the testimony of a twelve-year-old boy that he and several companions, who had been playing in the area, had thrown the boards down upon the tracks; there was also evidence of the finding of shattered boards on the track at a point thirty-five feet north of the overhead. It is contended that these boards caused the derailment of the pony trucks of the locomotive which in turn caused the derailment of the locomotive's driving wheels and the entire train.

When a passenger of a common carrier is injured and it appears that the accident was caused by something connected with the means or appliances of transportation, a presumption of negligence arises: *Zaltouski et ux. v. Scranton Ry. Co.*, 310 Pa. 531, 165 A. 847, and the cases cited therein: *Miller v. Penna. Railroad Co.*, 303 Pa. 524, 154 A. 924. The burden then shifts to the defendant to explain and rebut the presumption if he can. An examination of the defendant's evidence does not lead irresistibly to the conclusion that defendant was free from negligence as a matter of law. On the contrary, it was within the province of the jury to determine how and when the boards got on the track; whether there was adequate supervision and inspection of the right of way; whether the engineer should have seen these objects before striking them; and whether there was lack of due care in failing to check the speed of the train before it

488

overturned, after it became apparent to all that there was something wrong with its operation.

The defendant also complains of the refusal of the court below to grant a new trial, and cites as error, inter alia, the admission of testimony by various passengers regarding the relative speed of the train. It is axiomatic that the refusal of a motion for new trial will be reversed only where it appears that the lower court clearly abused its discretion. *Casey v. Siciliano,* 310 Pa. 238, 242, 165 A. 1; *Stewart et al. v. Penna. R. R.,* 293 Pa. 38, 141 A. 926. We do not need to consider whether the admission of this evidence was improper because of irrelevancy or indefiniteness because, upon all the facts of the case, even if its admission had been error, it would have been harmless error for which this Court will not reverse. The verdict of the jury indicates that it did not consider the speed of the train a necessary element of plaintiff's case.

The judgments of the court below are affirmed.

Justice DREW and Justice PATTERSON dissent from this opinion.