GLADYS M. HORNBECK, Plaintiff, v. THE HOMEOPATHIC HOSPITAL ASSOCIATION OF DELAWARE, MAURICE A. TURNER, M.D., RAYMOND W. HILLYARD, M.D., and MARY C. DAVIDSON, Defendants.

(*January* 29, 1964.)

STIFTEL, J., sitting.

*David C. Rittenhouse* (of Morris, Nichols, Arsht and Tunnell) for plaintiff.

*Rodney M. Layton* and *Max S. Bell, Jr.* (of Richards, Layton and Finger) for defendants The Homeopathic Hospital Association of Delaware, Maurice A. Turner and Raymond W. Hillyard.

*Clyde M. England, Jr.* (of Killoran and VanBrunt) for defendant Mary C. Davidson.

Superior Court for New Castle County, No. 1569, Civil Action, 1961.

STIFTEL, Judge:

This is a medical malpractice case. Plaintiff's amended complaint relies solely on the doctrine of *res ipsa loquitur*. Defendants move for summary judgment claiming that the doctrine of *res ipso loquitur* is inapplicable under the facts of this case and have filed an affidavit of an anesthesiologist to support their motion, which plaintiff moves to strike because it fails to comply with Superior Court Rule 56(e), *Del. C.*

Plaintiff went to the defendant hospital for the removal of a herniated disc. Prior to the operation on March 2, 1961, plaintiff was given a spinal injection without any difficulty. She was then turned prone on the operating table; whereupon she immediately propped herself on one elbow, took a sitting position, and proved very restless. She also complained that she was unable to breathe properly, although it did not appear to the anesthesiologist that she was having any trouble breathing. Repeated attempts were made to quiet her and to get her to reassume the prone position so that the operation could proceed. These attempts proved unavailing. The doctors decided that it was best to put her to sleep

with surital, a trade name for thiamylal sodium, an ultra-short-acting barbiturate. According to the deposition of the defendant anesthesiologist, Dr. Turner, the surital was injected into the patient's left hand. Dr. Hillyard, the operating neurosurgeon, indicated in the hospital record that he believed the injection of surital was made on the volar surface of the patient's forearm. In his deposition, however, he seems uncertain of where the patient received the injection. When plaintiff awoke in the recovery room, she noticed a granulating wound on her left inner forearm. There was no wound on her hand. In a very short time a necrosis developed on her left forearm which is both unsightly and uncomfortable and has caused pain, embarrassment and expensive medical treatment. The nurse-anesthetist said that she learned in school that surital can cause a necrosis if it comes in contact with the skin, but the anesthesiologist is doubtful of this when the anesthetic is used in its present two and a half per cent solution. Plaintiff alleges in her amended complaint that her left arm was healthy before the operation, that she was injured while unconscious, when defendants were in control of the disc operation, and that this injury, which is located outside the operative area, was so unusual that it would not normally occur in the absence of negligence of one or more of the defendants. Thus, plaintiff claims that the doctrine of *res ipsa loquitur* is available to her because this injury was outside the operative area and because it was unusual, thus giving rise to an inference of negligence.

This action is brought against many defendants based on their participation in the operation and their activities in relation to the plaintiff patient immediately following the operation. The action is against the anesthesiologist, Dr. Maurice A. Turner, the nurse-anesthetist, Mary C. Davidson, and the neurosurgeon, Dr. Raymond W. Hill-

yard, and against the Homeopathic Hospital Association of Delaware (the Memorial Hospital), on the contention that some of the persons who assisted with the operation or in the recovery room were in the employ or control of the Memorial Hospital.

*Res ipsa loquitur* is not a stranger to Delaware negligence practice. *Delaware Coach Co. v. Reynolds,* 6 Terry 226, 71 A.2d 69; see, also, *Ciociola v. Delaware Coca Cola Bottling Company,* 3 Storey 477, 172 A.2d 252, 259. Its use in medical malpractice has been tried in Delaware before, but never permitted insofar as the reported cases demonstrate. *DiFilippo v. Preston,* 3 Storey 539, 173 A.2d 333; *Mitchell v. Atkins,* 6 W.W.Harr. 451, 178 A. 593; *Christian v. Wilmington General Hospital Ass'n,* 11 Terry 550, 135 A.2d 727. Nationally, as the number of malpractice cases increase, its use by plaintiffs is being requested more and more, 77 Harv.L.Rev. 333 ("Malpractice and Medical Testimony"), supposedly for the reason that it is difficult to obtain the services of a doctor who is willing to testify against his professional brother, who has been charged with negligence by an unhappy patient. See, Roady and Anderson, Professional Negligence, p. 85; Louisell and Williams, Trial of Medical Malpractice Cases, par. 14.02, p. 421; McCoid, "Liability of Medical Practitioners", 12 Vanderbilt L.Rev. 549, 621. This is apparently a problem in Delaware as well.

 The Court determines in the first instance if plaintiff is entitled to rely on *res ipso loquitur.* See, *Delaware Coach Co. v. Reynolds,* 6 Terry 226, 71 A.2d 69, 74. To be entitled to this procedural advantage, plaintiff's injury must be of a kind which ordinarily does not occur in the absence of defendant's negligence. See, *Skipper v. Royal Crown Bottling Co.,* Del., 192 A.2d 910, 912; Prosser on Torts, 2d ed., p. 205. *Res ipsa,* however, is subject to

the same limitation as the rule permitting inference of negligence from proven circumstances; that is, if the injury is as consistent with the absence of negligence as with the existence of negligence, neither conclusion can be said to have been established by legitimate proof, and no issue is made for submission to the jury. *Skipper v. Royal Crown Bottling Co.,* supra; *Ciociola v. Delaware Coca Cola Bottling Co.,* 3 Storey 477, 172, A.2d 252, 257, 259. Normally, however, *res ipsa loquitur* raises an inference of negligence which gets a plaintiff to the jury. See, *Delaware Coach Co. v. Reynolds,* supra, 71 A.2d at p. 73; *Christian v. Wilmington General Hospital,* supra, 135 A.2d at p. 731. The jury is not compelled to find for the plaintiff, but the inference is evidence to be weighed and considered with the other evidence, not necessarily to be accepted as sufficient. *Delaware Coach Co. v. Reynolds, supra; Sweeney v. Erving,* 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815; *Christian v. Wilmington General Hospital,* supra. Where the principle is applied, the occurrence of the injury calls for explanation or rebuttal on the part of the defendant and when all the evidence is before the jury, the question for them is whether the preponderance of the evidence is or is not with the plaintiff.

■ ■ In a medical malpractice case, in order that a jury might be able to draw an inference of negligence from the circumstances, they must be able to understand the nature of the doctor's failure to exercise the proper standards of competence and care which other doctors in good standing would ordinarily adhere to in this or similar communities. See, *DiFilippo v. Preston,* supra; 70 C.J.S. Physicians and Surgeons § 62, p. 1006. Normally, in order for a jury to determine this, it is essential that plaintiff supply expert testimony to enable the jury to decide intelligently if the doctor has departed from the

proper standards of his profession. See, *Christian v. Wilmington General Hospital,* 11 Terry 550, 135 A.2d 727, 730; *Cyr. v. Giesen,* 150 Me. 248, 108 A.2d 316, 318. In fact, only on a rare occasion should a jury be permitted to draw an inference of negligence without the assistance of an expert. See, *Christian v. Wilmington General Hospital,* supra, 135 A.2d at p. 730; see, also, *Ayers v. Parry,* 3 Cir., 192 F.2d 181, 184; *Hawkins v. McCain,* 239 N.C. 160, 79 S.E.2d 493; *Toy v. Rickert,* 53 N.J. Super. 27, 146 A.2d 510, 513; and "Malpractice—Expert Witness", 81 A.L.R.2d 597, 608. This rare occasion presents itself where the lack of skill of the physician is clearly within the understanding of a layman and where only common knowledge and experience are required to comprehend the nature of the cause of injury. *Larrimore v. Homeopathic Hospital Ass'n,* Del.Super., 176 A.2d 362, aff'd Del., 181 A.2d 573; *Christian v. Wilmington General Hospital,* supra, 135 A.2d at p. 731 (recognizing rule, but holding it inapplicable). The negligent act must seem reasonably apparent from the facts. *Goodwin v. Hertzberg,* 91 U.S.App. D.C. 385, 201 F.2d 204; Note: 60 Mich.L.Rev. 1153, 1159.

Plaintiff claims her forearm injury is unusual because it is outside the operative area and to a portion of her anatomy which had been healthy prior to the operation. She argues that these facts ploint to someone's negligence.

Plaintiff's argument that *res ipsa loquitur* should be available where a part of plaintiff's body is injured, which is not under treatment, receives substantial support in many jurisdictions, especially California. See Anno.: "Malpractice—Res Ipsa Loquitur", 162 A.L.R. 1265, recently supplemented in 82 A.L.R.2d 1262; Annon.: "Malpractice—Anesthetist", 53 A.L.R.2d 142, 148; Lesnick & Anderson, Nursing Practice and the Law, p. 298; Belli,

"Silent Medical Treatment", 1 Vill.L.Rev. p. 250. In most jurisdictions where this doctrine is applied, the negligent act generally seems readily apparent from the facts. Louisell and Williams, Trial of Medical Malpractice Cases, par. 14.06, p. 439; but compare Rosen, "Defense to Malpractice —Res Ipsa", 13 Cleveland-Marshall L.Rev. 128. Is this true here? This Court must now decide if it is within the ability of a court and lay jury, without the help of an expert, to say that in a spinal operation, where an intravenous injection of the hand or arm takes place, a patient does not, without the probability of negligence, receive a necrosis on her forearm.

 Defendants claim that the general rule which permits *res ipso loquitur,* when a portion of the anatomy unrelated to the operation or treatment is damaged, has no application to the facts of this case. To aid their argument, they submit with their motion the affidavit of Dr. Sanders, an anesthesiologist of a sister hospital, in which the doctor tries to explain how the skin necrosis could have occurred to this plaintiff presumably without the negligence of defendants.[1] This affidavit is submitted to point out to the Court the necessity for technical assistance

----

[1] Dr. Sanders' affidavit lists a number of possible causes, or combinations thereof, which could have produced plaintiff's skin necrosis without negligence on the part of the defendants. It concludes with the following list of possible causes:

"1. A pre-existing undetectable lesion at the site of the necrosis.

"2. A pre-existing undetectable condition of phlebitis in the left forearm accompanied by pressure against the affected areas.

"3. Undetectable stagnation of blood circulation together with normal pressure to support plaintiff's arms, resulting in a compromise of the blood circulation in a localized area and later skin necrosis.

"4. The use of vasoxyl may have aggravated the conditions mentioned in 1, 2 and 3.

"5. The invert sugar solution used during the operation, if pooled within a local area of the venous system, could produce a minor degree of irritation which, in the presence of the factors mentioned above, might aid in causing an undetectable thrombosis.

128

to a court and lay jury so that they can properly understand the nature of the injury and the possible causes therefor. Plaintiff fights the use of this affidavit by these defendants on her motion to strike, claiming that the affidavit violates Superior Court Rule 56(e)[2] because it is not based on personal knowledge of the anesthesiologist and because it is not an opinion which is based on facts in this record.

Dr. Sanders does not give his opinion as to the probable cause of the necrosis. *Cf. Dulansky v. Iowa-Illinois Gas Electric Co.*, D.C.S.D.Ia., 10 F.R.D. 566, 576, 577. He examined the hospital record, which was not attached to the affidavit, and opined that plaintiff's necrosis might have been caused in several ways. The purpose of this affidavit, then, is not to show that the attending doctors and anesthetists were not negligent, but that the procedural advantage of *res ipsa loquitur* should not be available to the plaintiff because the mere presence of the forearm-necrosis after the operation does not neces-

Note 1 continued—

"6. The administration of spinal anesthesia in combination with the factors set forth above, plus localized pressure from the weight of plaintiff's arm, might cause vasospasm and predispose to venous engorgement and clotting, leading ultimately to skin necrosis.

"7. A possible clot lodging at a site remote from the side of the injection where such clot was formed causing venous thrombosis and later skin necrosis.

"8. A self-inflicted injury while plaintiff was under the influence of drugs."

[2]Superior Court Rule 56(e) reads as follows:

"Form of Affidavit; Further Testimony. Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and which show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The Court may permit affidavits to be supplemented or opposed by depositions or by further affidavits."

sarily infer negligence. This affidavit has some value in assisting the Court to decide if it should permit the jury to infer negligence from the facts of the case. The probative aspect of the affidavit has no pertinency for this purpose. But even if Rule 56(e) applies, it does not stand in the way of. the use of this affidavit by the Court. It must be remembered that the expert rarely observes the event he is called upon to explain. 32 C.J.S. Evidence § 534, p. 242. The possible explanations and underlying facts in the affidavit as to how this type of injury could occur without the fault of the defendants are supposedly based on medical knowledge of Dr. Sanders as applied to the hospital record after he read and studied it. Consequently, his opinion testimony is competent when based on the facts in the hospital record. In *Crovella v. Cochrane,* Fla. App., 102 So.2d 307, at 310 (81 A.L.R.2d 597, 607), the Court, in meeting a similar objection, explained:

"As to the first ground of assault on the affidavit, the overwhelming weight of authority supports the view that except to the extent that the physical condition of a person is open to ordinary observation by persons of common experience, the testimony of one who is qualified in the field of medical knowledge must be adduced to inform the jurors of the proper procedures for diagnosing and treating the particular case. *Millar v. Tropical Gables Corp.,* Fla. [App.], 99 So.2d 589; *Howell v. Jackson,* 65 Ga.App. 422, 16 S.E.2d 45. Jurors and courts do not know and are not permitted arbitrarily to say what are the proper methods of diagnosing and treating human ailments, and the opinion testimony of an expert witness, given in the form of an affidavit, is competent to be received by the judge in disposing of a motion for summary judgment, to the same extent and subject to the same rules as apply to the oral presentation of such testimony before a jury. The first ground of plaintiff's ob-

jection to the affidavit is therefore without merit."
The Sanders affidavit has no significance except to make
known to the Court the technical medical complications
that can lie in the background of an unexplained injury
so that this Court may hesitate before it decides that the
presence of such injury permits the jury to infer defend-
ants' negligence.

Today, injections are commonplace, and usual-
ly are performed without incident. This is that rare oc-
casion where an injury has occurred. Whether it is as a
result of carelessness by the defendants, or any of them,
need not be determined at this time. The question is
whether the presence of the forearm-necrosis is probably
due to negligence. This cannot be fairly answered with-
out assuming specialized medical knowledge in both the
Court and jury. There may be a variety of reasons why
a patient undergoing an operation may suffer a skin
necrosis not in the immediate area of the operation—none
of which may be related to the defendants' failure to ex-
ercise proper skill and care. Expert testimony is essen-
tial to establish negligence when the facts alone fail to be-
speak negligence. This Court cannot reasonably say from
the present record that in the absence of negligence, a
patient would not suffer such an injury as this plaintiff
received. Since the fundamental postulate of the *res ipsa
doctrine* cannot be assumed on the facts of the present
case, application of the doctrine is inappropriate.

Furthermore, an examination of the facts leaves a
reasonable inference that the necrosis may have been due
to an extravasation of the surital from the area in which
the intravenous injection took place. The neurosurgeon,
Dr. Hillyard, notes this fact in the hospital record. This
notation implies that instead of an unaffected portion of
the body being involved, the area of treatment may have

been involved, since an escape of surital from the area where the necrosis occurred may be considered the operative or treatment area. See, *Ayers v. Parry,* supra. At least, expert testimony may be necessary to indicate that it was not. If the surital escaped from an injection in the forearm, the plaintiff would be required to have an expert explain the departure, if any, of the defendants from the standard of care required of a physician and nurse in the care and treatment of this patient. *DiFilippo v. Preston,* supra. The inference that the surital may have escaped for an injection in the area of the forearm may alone be sufficient to refuse an inference of negligence. Even if the surital was injected in the left hand rather than in the forearm, as defendants depose, nevertheless, it is not clear as a matter of law that the presence of the forearm-necrosis is medically unrelated to the place of the injection so as to infer the negligence of defendants, *cf. Bauer v. Otis,* 133 Cal.App.2d 439, 284 P.2d 133, 135, even though Dr. Hillyard says he doesn't know how it could happen. The record raises still another inference— the patient's involuntary restlessness. Plaintiff was difficult to control and thus may have contributed to her injury without the probability of negligence on the part of any of the defendants.

I conclude, therefore, that there are no facts in the record, when considered in a light most favorable to plaintiff, which indicate, absent scientific assistance, that the skin necrosis was more probably than not due to the negligence of all or any of these defendants so as to authorize the use of the doctrine of *res ipsa loquitur.* Nothing said herein should be construed to mitigate against the application of this doctrine in the proper case.

Since plaintiff's complaint is based solely on *res ipsa loquitur,* I will award judgment to defendants unless with-

in 14 days from the date appearing on this decision, the plaintiff amends her complaint to allege negligence in accordance with Superior Court Rule 9(b).

Present order on notice.