NATIONAL FIRE INSURANCE COMPANY OF HARTFORD, a corporation of the State of Connecticut, Plaintiff,

v.

The PENNSYLVANIA RAILROAD COMPANY, a corporation of the State of Pennsylvania, and Reading Company, a corporation of the State of Pennsylvania, Defendants.

Superior Court of Delaware.

New Castle.

June 3, 1966.

Albert L. Simon, Wilmington, for Plaintiff.

Charles S. Crompton, Jr., Wilmington, for defendant, The Pennsylvania R. Co.

Warren S. Burt, Richard I. G. Jones, Wilmington, for defendant, Reading Co.

QUILLEN, Judge:

The above matter comes before the Court on defendants' Motion for Summary Judgment. Plaintiff is the insurance carrier for the Board of Harbor Commissioners of the City of Wilmington and brings this action as subrogee to the rights and liabilities of its insured. Plaintiff claims it is entitled to recover from defendants the sum of $2,300 paid to its insured for the insured's gantry crane at the Marine Terminal. Certain cars of a freight train owned and operated by the defendants became derailed and collided with the crane causing the damage. The exact nature of the agreement between the defendants, by which the train was operated, is not in issue here and, for the purposes of the Motion, it is assumed that the actions of the defendants were joint and several. Plaintiff claims the negligence of the defendants caused the collision.

For the purpose of this Motion, I will adopt the statement of facts presented in the answering brief of the plaintiff in opposition to the Motion with one addition. The plaintiff's statement, omitting references to the record, read as follows:

"On August 27, 1962 at approximately 4:15 p. m., the Pennsylvania Railroad Company, through its agents or servants, was operating a shifter engine or locomotive which was moving seven gondola cars owned by the defendant, Reading Company, on the dock of the Marine Terminal. At the same time, a gantry crane, owned by the Board of Harbor Commissioners, was straddling the railroad tracks used in connection with the loading of these freight cars. During one of its movements along the track, the wheels of the fourth and fifth cars of the defendant's train left the track throwing one of the gondola cars against the gantry crane causing damages thereto.

"The train involved in the accident had been operating along the track in question for approximately one hour prior to the derailment. The train did not use the curved portion of the track but operated only on the tracks running parallel to the loading dock and had operated back and forth over the switch numerous times safely and without incident or mishap.

"The derailment occurred at or near a section of the track which merges into another track curving away from the dock area. At this location, there is a switching device which permits the use of the curving track. The crane which was damaged as a result of the derailment was straddling the track at or near the switching device.

"The switch in question was a lever type switch permanently situated and recessed in the ground. The switch was set at a position for use of the track running parallel to the loading dock and remained so the entire day on which the derailment occurred."

The additional fact necessary for the disposition pertains to the maintenance of the switch. It is clear from the record that maintenance of the switch in question, as distinct from its operation, was the obligation of the Marine Terminal. This fact was expressly acknowledged by both sides at oral argument. It is also clear that the parties are talking about the same switch, notwithstanding the variance in the descriptive language of the affidavits.

Plaintiff conceded at oral argument that there is no evidence to support any specific allegation of negligence and that it is relying solely on the doctrine of *res ipsa loquitur*. The question of law presented is simply whether the doctrine is applicable or not.

■ Under Delaware law, in a circumstantial evidence case based on factual in-

ferences, "the question of the applicability of the doctrine of *res ipsa loquitur* should be determined at the close of plaintiff's evidence." Delaware Coach Company v. Reynolds, 6 Terry 226, 71 A.2d 69, 75 (1950). In the summary judgment context, the facts to be considered are the objective facts of the situation presented to the extent they are not genuinely disputed. On a motion by a defendant, any genuine dispute in fact is resolved in favor of the plaintiff.

It is for this reason that, on the pending question, I have considered only the statement of facts as stated by the plaintiff, which is substantiated clearly by the record, plus the additional undisputed fact concerning the obligation of maintenance of the switch. If the case were to go to trial, this evidence in the normal course of events, would be before the court at the close of the plaintiff's case. I do not reach the defendants' affidavit evidence, which related to their due care and their explanation of the occurrence, unless I find the doctrine of *res ipsa loquitur* applicable. To put it another way, unless the evidence of the plaintiff justifies the inference of negligence on the part of the defendants, I do not have to consider whether the explanatory evidence of the defendants "destroy[s] the inference of negligence, or so completely contradict[s] it that the jury could not reasonably accept it." Delaware Coach Company v. Reynolds, supra, at 71 A.2d 75.

The evidence on which the plaintiff relies to justify an inference of negligence on the part of the defendants can be summarized as follows. On the date of the occurrence, the defendants were operating a train on the dock of the Marine Terminal. On one of numerous trips over a portion of the track, where there was a switch maintained by the plaintiff's insured, the fourth and fifth cars of the defendants' train became derailed. As a result of the derailment the gantry crane of the plaintiff's insured was damaged.

In determining whether the inference sought by the plaintiff is justified, it is necessary to determine the standard to be applied by the Court in this situation. I find that the clearest and most helpful judicial declaration on this subject was made by Judge Stiftel in the recent case of Phillips v. Delaware Power & Light Company, 202 A.2d 131 (Super.Ct.1964). Judge Stiftel, considering a motion for summary judgment, said at 202 A.2d 133:

> "To be entitled to the use of *res ipsa loquitur* plaintiffs must show that the accident occurred under such circumstances that in the ordinary course of events the accident would not have occurred if the Power Company had observed proper care. See Delaware Coach Co. v. Reynolds, supra; Stevenson, Law of Negligence in the Atlantic States, p. 1400. This record indicates a rational basis for determining that the accident was probably one that would not have occurred in the normal course of events without some negligence on the part of the Power Company. This does not mean that in order to be entitled to the use of *res ipsa loquitur,* the possibility of other causes must be altogether eliminated but only that their likelihood must be so reduced that the greater probability of negligence lies at the Power Company's door. See Schafer v. Wells, 171 Ohio St. 506, 172 N.E.2d 708, 712; 2 Harper and James, Law of Torts, p. 1085."

In a similar vein, the Supreme Court in Skipper v. Royal Crown Bottling Company of Wilmington, Inc., 192 A.2d 910, 912 (1963), a decision affirming summary judgment for the defendant, said the following:

> "The doctrine of *res ipsa loquitur* is a rule of circumstantial evidence. It becomes applicable when the particular manner in which the injury occurred would lead reasonable people to conclude that the injury would probably, in the normal course of events, not have oc-

curred in the absence of some negligence on the part of the defendant. * * *

*       *       *       *       *       *

"*Res ipsa loquitur,* however, is subject to the same limitation as the rule permitting an inference of negligence from proven circumstances, i. e., if the injury is as consistent with the absence of negligence as with the existence of negligence, neither conclusion can be said to have been established by legitimate proof, and no issue is made for submission to the jury."

See also Hornbeck v. Homeopathic Hospital Association of Delaware, 197 A.2d 461 (Super.Ct.1964).

■ When *res ipsa loquitur* is alleged, "a court examines the particular manner in which the plaintiff alleges the injury to have occurred and determines whether in the 'usual course of events' reasonable people would conclude that the injury would probably not have occurred in the absence of some negligence on the part of the defendant." Delaware Coach Co. v. Reynolds, supra, 71 A.2d 73. See also McGuire v. McCollum, 10 Terry 359, 116 A.2d 897, 901 (Super.Ct.1955).

Perhaps the most restrictive language that has been used by our Supreme Court is found in Ciociola v. Delaware Coca Cola Bottling Co., 3 Storey 477, 172 A.2d 252, 257 (1961) where the Supreme Court said generally of circumstantial evidence:

"In order to prove the defendant's negligence by circumstantial evidence, however, it is necessary that the conclusion of negligence be the only inference possible from the admitted circumstances. If, therefore, the proven circumstances are as consistent with the absence of negligence as with the existence of negligence, neither conclusion can be said to have been established by legitimate proof and the issue may not therefore be submitted to the jury."

The Supreme Court expressly made the above language applicable to the doctrine of *res ipsa loquitur* at 172 A.2d 259. See also Dickens v. Horn & Hardart Baking Co., 209 A.2d 169, 171 (Super.Ct.1965).

■ The consistent theme of the above citations is unmistakable. The inference of negligence which the plaintiff seeks must be such that the Court is satisfied that the "greater probability of negligence lies at the [defendant's] door." In the instant case, considering the place of the derailment at the switch maintained by the plaintiff's insured, I cannot say that the greater probability of negligence lies at the defendants' door. Even without consideration of the defendants' explanation, the facts are as consistent with the absence of negligence on the defendants' part as they are with negligence on the part of the defendants.

■ I have taken into consideration the fact that exclusive control by the defendant is no longer a prerequisite to the application of *res ipsa loquitur*. But the question of control may be important in determining whether the defendants caused the injury. Skipper v. Royal Crown Bottling Co., Inc., supra, at 192 A.2d 912. In particular, control is necessarily a factor in weighing inferential probabilities.

I have also considered the United States Supreme Court case, Jesionowski v. Boston and M. R.R., 329 U.S. 452, 67 S.Ct. 401, 91 L.Ed. 416 (1947), cited by the plaintiff, but I find that case to be distinguishable. In that case, which arose under the Federal Employers' Liability Act, the railroad contended that the brakeman "negligently threw the switch while the lead car in the backward motion straddled the switch with one set of car wheels on one side of the switch and one on the other." The defendant argued under the rule of "exclusive control" that *res ipsa loquitur* was inapplicable. The Court rejected the restrictive control test and held that the defendant's explanation was properly submitted to the jury and that, if the jury first found the plaintiff was not negligent, the jury could then rely on *res ipsa loquitur*.

The United States Supreme Court thus found that the defendant's explanation raised a factual issue of contributory negligence for the jury. This issue was to be considered along with the factual inference of negligence on the railroad's part resulting from the fact of a derailment. In short, the analysis of the Supreme Court there raised the question of the defendant's explanation for the particular occurrence, a question I do not reach in the instant case.

The existence of the switch, maintained by the plaintiff, in this case, is not, in my opinion, evidence of an active external cause. It is rather part of the circumstances which must speak for themselves if *res ipsa loquitur* is to be applicable. It is an uncontested objective fact, independent of any question of reasonable behavior in the particular instance. In my opinion, the mere existence of this switch and the duty of the plaintiff to maintain it necessarily leads to the conclusion, pursuant to the Delaware authorities, that this "thing" does not speak for itself. To the extent that the *Jesionowski* case may be construed to be inconsistent with this conclusion, it is inconsistent with Delaware law.

A caveat is appropriate. It should be remembered that *res ipsa loquitur* is merely a rule of circumstantial evidence that "has a flexibility in application which depends upon the court's evaluation of the situation presented." Delaware Coach Co. v. Reynolds, supra, at 71 A.2d 73. Care must, therefore, be taken in comparing cases with different factual situations. For example, in a case where the inference of negligence from the circumstances is clear, but it points equally to either of two defendants, a court may find there is an added policy consideration insofar as the burden of producing evidence is concerned. Thus, in the *res ipsa loquitur* and circumstantial evidence context, it is even more important than usual not to extend court decisions beyond their peculiar factual setting.

I am satisfied in this case that the witnesses to the occurrence have all been heard, insofar as any light can be shed on the cause of the injury. Therefore, there is no good reason to delay the entry of judgment beyond this stage of the case.

The defendants' Motion for Summary Judgment is granted. It is so ordered.