ANGELA POPE, PLAINTIFF-APPELLANT, v.
VETERANS TAXI SERVICE, DEFENDANT-RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 25, 1967—Decided October 25, 1967.

Before Judges GAULKIN, LEWIS and KOLOVSKY.

*Mr. Richard L. Rosenthal* argued the cause for appellant (*Mr. Irwin B. Schector,* attorney).

*Mr. Seymour M. Karas* argued the cause for respondent (*Messrs Diamond & Karas,* attorneys; *Mr. Donald G. Collester, Jr.* on the brief).

The opinion of the court was delivered by

KOLOVSKY, J. A. D. The critical question on this appeal is whether a passenger in a taxicab establishes a *prima facie* case of negligence in an action against the taxi company by proving only that the taxicab driver suddenly applied his

brakes and brought the cab to such an abrupt stop that the passenger was thrown from the rear seat in which she was sitting and hurtled forward, striking her face on the back of the front seat.

The trial court, granting defendant's motion for dismissal at the end of plaintiff's case, answered the question in the negative. We disagree and reverse.

■■ Defendant as a common carrier of passengers owed plaintiff a high degree of care. *Gaglio v. Yellow Cab Co.*, 63 *N. J. Super.* 206, 211 (*App. Div.* 1960). " 'Carriers who accept passengers entrusted to their care must use great caution to protect them, which has been described as "the utmost caution characteristic of very careful prudent men," or "the highest possible care consistent with the nature of the undertaking," ' " *Harpell v. Public Service Coordinated Transport*, 20 *N. J.* 309, 316 (1956). See also *Rivers v. Penna. R. R. Co.*, 83 *N. J. L.* 513, 515 (*E. & A.* 1912). "This duty is not diminished, even in cases of a sudden emergency." *Massotto v. Public Service Coord. Transport*, 71 *N. J. Super.* 39, 47 (*App. Div.* 1961).

■■ The jury was entitled to infer from the sudden and violent nature of the stop that defendant had failed to exercise the requisite degree of care. It was for the defendant to come forward and offer an explanation as to why an emergency stop was necessary, and for the jury to determine from all the evidence "how the driver became involved in that situation and whether the proper standard of care to avoid the emergency was exercised." *Lindsey v. D. C. Transit Company*, 140 *A.* 2d 306, 309 (*D. C. Ct. App.* 1958).

■ We hold that the doctrine of *res ipsa loquitur* is applicable; plaintiff's proofs were sufficient to support a permissible inference that the sudden stop and plaintiff's resultant injuries occurred because of defendant's failure to exercise the requisite degree of care.

■ As the court said in *Kahalili v. Rosecliff Realty, Inc.*, 26 *N. J.* 595 (1958) :

"*Res ipsa loquitur* \* \* \* symbolizes a permissible presumption of negligence from the plaintiff's proof, that is to say, an allowable inference of the defendant's want of due care where (a) the occurrence itself ordinarily bespeaks negligence; (b) the instrumentality was within the defendant's exclusive control; and (c) there is no indication in the circumstances that the injury was the result of the plaintiff's own voluntary act or neglect. The rule has its foundation in probability and the procedural policy of placing the onus of producing evidence upon the party who is possessed of superior knowledge or opportunity for explanation of the causative circumstances. The presumption arises where the circumstances furnish reasonable grounds for the inference that if due care had been practiced by the person having control of the instrumentality causing the injury, the mishap would not have occurred. If the circumstances are such as will, unexplained, sustain the inference of negligence as reasonably probable, a *prima facie* case is made, and the issue goes to the jury." (at *p.* 605)

■ Defendant contends, and the trial court ruled, that a sudden stop of an automobile does not ordinarily bespeak negligence. We need not resolve under what circumstances that may be true where defendant's duty is only to exercise reasonable care. We are satisfied that where, as here, a defendant carrier's duty is to exercise a high degree of care, a sudden violent stop of the vehicle ordinarily bespeaks violation of that duty. *Shaw v. Pacific Greyhound Lines,* 50 *Cal. 2d* 153, 323 *P. 2d* 391 (*Sup. Ct.* 1958); *Hardin v. San Jose City Lines,* 41 *Cal. 2d* 432, 260 *P. 2d* 63 (*Sup. Ct.* 1953); *Delaware Coach Co. v. Reynolds,* 6 *Terry* 226, 45 *Del.* 226, 71 *A. 2d* 69 (*Sup. Ct.* 1950); *Payne v. Stott,* 181 *S. W. 2d* 161 (*Mo. Ct. App.* 1944); *cf. Massotto v. Public Service Coord. Transport, supra,* at *p.* 52; see generally, Annotation, "Motor carrier—sudden stop or start," 57 *A. L. R. 2d* 5, 30, 79 (1958); Annotation, Auto—stopping—*res ipsa loquitur,* 79 *A. L. R. 2d* 153, 170 (1961).

■ Defendant further contends that absent proof of specific acts of alleged negligence, to permit a jury to infer negligence would be to countenance and sanction speculation. Defendant misconceives the purpose of *res ipsa loquitur.* The very viability and utility of the doctrine is predicated upon the fact that in the realm of common experience

injuries occasioned in encompassed situational contexts are generally the product of a defendant's negligence. Plaintiff need not adduce direct evidence of negligence.

Furthermore, the utility of the doctrine is not predicated solely on probability; its application also subserves the pragmatic function of imposing a "duty of producing evidence upon the party who has superior knowledge or opportunity for explanation of the causative circumstances." *Bornstein v. Metropolitan Bottling Co.,* 26 *N. J.* 263, 269 (1958); *Vespe v. DiMarco,* 43 *N. J.* 430, 436 (1964); *McCormick, Evidence,* § 309, at *p.* 643 (1954). The cause of the sudden stop was peculiarly within the knowledge of the cab driver. A passenger in a common carrier must necessarily repose confidence in the operator of the vehicle. He is rarely alert to traffic hazards and rarely capable of explaining the circumstances of an accident. *Cf. Vespe v. DiMarco, supra,* at *p.* 436; *Mitcham v. City of Detroit,* 355 *Mich.* 182, 94 *N. W.* 2d 388 *(Sup. Ct.* 1959).

The judgment is reversed and the cause remanded for a new trial.