JUDITH ANN CIOCIOLA, by her next friend, Joseph P. Ciociola, and JOSEPH P. CIOCIOLA, individually, Plaintiffs Below, Appellants, v. DELAWARE COCA-COLA BOTTLING COMPANY, Defendant Below, Appellee.

478

(*June* 6, 1961.)

SOUTHERLAND, *C. J.*, WOLCOTT and BRAMHALL, *J. J.*, sitting.

*H. B. Rubenstein* (of Leshem and Rubenstein) for appellants.

*Albert W. James, Arthur J. Sullivan* and *Henry N. Herndon, Jr.* (of Morris, James, Hitchens and Williams) for appellee.

Supreme Court of the State of Delaware, No. 7, 1961.

WOLCOTT, J.:

This is an action for damages for personal injuries and medical expenses. The plaintiffs are Joseph P. Ciociola and his minor daughter, Judith, suing by her next friend. The complaint contains three causes of action: first, that the minor plaintiff is entitled to damages by reason of the breach by the defendant, Delaware Coca-Cola Bottling Company, of an implied warranty that a bottle, the breaking of which caused the injuries, was fit for its intended purpose; second, that the defendant was guilty of negligence which caused the injuries; and, third, that the doctrine of *res ipsa loquitur* establishes the liability of the defendant.

At the close of the plaintiffs' case a verdict for the defendant was directed on all causes of action. As to the cause of action based upon breach of implied warranty, the verdict was directed because of the lack of privity of contract between the minor plaintiff and the defendant. As to the cause of action based on the negligence of the defendant, the verdict

was directed for lack of sufficient facts to require the submission to the jury of the issue of defendant's negligence. As to the causes of action based upon the doctrine of *res ipsa loquitur*, the verdict was directed because of the inapplicability of the doctrine.

At the argument before us, counsel for the plaintiffs disclaimed as to the father any contention in his behalf based upon breach of implied warranty, no such contention having been made in the court below. Accordingly, upon the question of whether or not a verdict was properly directed for the defendant upon the issue of implied warranty, we are concerned solely with the right of the minor plaintiff to maintain the action upon this theory.

It is necessary to state the facts in some detail, which we necessarily do in the light most favorable to the plaintiffs.

Joseph Ciociola operates with his wife a retail grocery store in Richardson Park, a suburban community near Wilmington. The store is physically part of their home located on a corner property. Mr. and Mrs. Ciociola have three minor children, one of whom, Judith, is the minor plaintiff in this action.

The Ciociola store consists of one room and is operated partly as a self-service and partly as a customer-waited-on store. The front portion of the store is devoted to the display and sale of groceries. In the rear of the store is a large cooler in the upper part of which is kept fruit, milk and vegetables, and in the lower part of which is kept various types of bottled soda drinks. Alongside the cooler are racks in which are stored warm bottled soda drinks. It was the custom of the patrons of the Ciociola store to help themselves to warm soda drinks and occasionally to cooled soda drinks stored in the cooler, but ordinarily either Mr. or Mrs. Ciociola served their customers with cooled soda drinks. It was also the custom for

the three minor Ciociola children to help themselves to cooled soda drinks from the cooler.

One brand of bottled soda drink kept in the cooler for sale was Coca-Cola, bottled, capped, sold and delivered by the defendant to the Ciociolas. Deliveries of bottled Coca-Cola to the Ciociolas were made on defendant's behalf by its employee described as a driver-salesman who made deliveries, accepted payment, and took back empty bottles. Deliveries were made ordinarily on Mondays and Thursdays of each week, except that if Thursday of a particular week was a holiday, delivery would be made on the day before.

The manner of making delivery of bottled Coca-Cola by defendant's driver-salesman was as follows: Upon arrival at the Ciociola store, defendant's employee would remove cases of Coca-Cola from his truck, place them on a hand dolly, pull the dolly up several steps into the store, and then remove the cases from the dolly and place cartons of bottled Coca-Cola in the rack next to the cooler, placing the cartons thus delivered on top of those still left in the rack so that, ordinarily, the most recently delivered cartons would be located at the top of the rack.

Defendant's driver knew that the members of the Ciociola family, including the minor plaintiff, consumed some of the bottled Coca-Cola so delivered.

The accident which gives rise to this action happened on Thanksgiving Day. On the day before defendant's driver made a customary delivery of bottled Coca-Cola, received payment for it and took away such empty bottles as there were. On the day of delivery, Mrs. Ciociola, at 2:00 p.m. and again at 8:30 p.m., filled the cooler with bottled Coca-Cola from the top of the rack by filling empty spots in cartons already in the cooler with individual bottles and by placing whole cartons of bottled Coca-Cola in the back of the cooler, at the

same time moving cartons already in the cooler toward the front.

Any hitting of one bottle against another could have been heard and would have been noticed by either Mr. or Mrs. Ciociola. Prior to the accident in question no such noise had been heard. From this, plaintiffs argue that the inference is that the bottled soda drinks had been handled with care. On neither Thanksgiving Day nor the day before had there been any unusual temperature change either in the store proper or in the cooler, itself.

On Thanksgiving Day, about 2:00 p.m., one of the Ciociola children, not the minor plaintiff, took three bottles of Coca-Cola from the cooler for consumption by the three Ciociola children. He noticed nothing unusual about the bottles. The minor plaintiff rested the one given to her on a table, holding it with her left hand grasping the bottle at about the middle, and attempted to open the bottle with an ordinary bottle opener held in her right hand. She applied normal pressure to the opener whereupon the bottle broke in two parts. The break started at the top of the bottle in the area of the lip and extended diagonally down to the level of the liquid. The break was clean and the two parts thereafter fitted together perfectly. The minor plaintiff looked at the bottle before she attempted to open it but noticed no defect in it.

As a result of the breaking of the bottle, a tendon in the left hand of the minor plaintiff was severed in the area of the base of the thumb and index finger.

In order to establish negligence on the part of the defendant, plaintiffs proved the method of the defendant's bottling operation. Generally speaking, this is as follows:

Defendant obtains new bottles from bottle manufacturers which are required by specification to withstand a minimum pressure of 400 pounds per square inch. Defendant

reuses its bottles and the average use life of a bottle is 33 times. The limitation of the number of times a bottle may be used depends largely upon the failure of customers to return the empties and upon some breakage in the bottling operation.

The initial step in defendant's bottling plant is for empty bottles to be loaded on a conveyor belt, during the course of which no inspection of bottles for defects takes place. Thereafter, the bottles are conveyed to a washing process in the course of which some force is applied to the bottles but no visual inspection for defects takes place. From the washing process, bottles in groups of 16 on a steel conveyor belt pass in front of an employee whose duty it is to inspect these clean bottles visually for defects. The inspection area is well lighted and the inspector views the bottles against a white background. The employee thus engaged has approximately 5 or 6 seconds to inspect visually each batch of 16 bottles. In the course of this inspection the bottles do not turn. The inspecting employee is rotated from this duty every 30 to 45 minutes.

From this inspection point, the bottles are conveyed to the filler operation which is conducted mechanically under the supervision of an additional employee whose duty does not include the inspection of bottles for defects. When the bottles are filled, they are then fed to a machine by which the bottles are capped. In these processes a pressure of 45 pounds per square inch is placed upon the bottle. If a bottle going through the capping process is cracked, even with a hairline crack, the pressure involved in the process will explode the bottle. The employee operating the capping machine conducts a visual inspection of the bottles as they pass through the machine.

From the capping machine, the bottles pass on a conveyor belt to a case-packer in groups of 24 which are guided by flexible steel fingers into the pockets of cartons and thrust mechanically by cartons into cases. A conveyor belt then passes the cased cartons of bottled Coca-Cola to an employee

who stacks 30 cases in 5 layers manually on pallets. The laden pallets are then loaded by a forklift onto trucks, in the process of which the pallet is dropped approximately 2 inches to the bed of the truck.

The method of bottling employed at the defendant's plant, including the inspection system, complies with the standards followed by the Coca-Cola bottling industry, consisting of approximately 1100 plants. The defendant follows suggestions made by the Coca-Cola Company which conducts research on proper systems to be adopted and maintained by bottlers.

As one of her causes of action, the minor plaintiff claims recovery on the basis of a breach by the defendant of an implied warranty that the container within which the Coca-Cola was bottled was fit for the use for which it was intended. The breach alleged, of course, is that there was a defect in the bottle which caused the injury and thus the container was not fit for its intended purpose. To this contention the defendant answers that the minor plaintiff cannot recover for breach of an implied warranty because there was no privity of contract between her and the defendant, which is an historical requisite to the maintenance of an action based upon breach of an implied warranty.

Liability by a seller or manufacturer of goods for breach of warranty originally was based upon tort concepts. Originally the action was always brought as an action on the case for the breach. Gradually, the concept of the nature of the action changed and an action was permitted finally to be brought on the contract itself. Thereafter, rightly or wrongly, actions for breach of an implied warranty were regarded as *ex contractu*. From this concept arose the necessity of some privity being in existence between the suing plaintiff and the implied warrantor. *Prosser on Torts*, 493; *McLachlan v. Wilmington Dry Goods Co., 2 Terry* 378, 22 A. 2d 851.

Instances are found in our reported decisions of actions seeking recovery in assumpsit for breach of the contract, or in case for the breach of the warranty. See *Tyre v. Causey*, 4 *Harr.* 425; *Burton v. Young*, 5 *Harr.* 233; *McLachlan v. Wilmington Dry Goods Co., supra.* In such actions, proof of the breach of the implied warranty is sufficient to recover damages irrespective of the fault or negligence of the warrantor. *Jarnot v. Ford Motor Co.*, 191 *Pa. Super.* 422, 156 *A.* 2d 568; *Prosser on Torts*, 706. In effect, therefore, the manufacturer or seller of goods or articles is made an insurer of the quality and fitness of his product for human use.

This concept of the common law, that an action brought for breach of implied warranty was an action on a contract, was thus early adopted in Delaware in all of its ramifications including the requirement that there be privity of contract between the plaintiff and the defendant. Absent such privity, the plaintiff could not impose upon the defendant the absolute liability of an insurer for injuries caused by a defect in its product. *Barni v. Kutner*, 6 *Terry* 550, 76 *A.* 2d 801, and *Behringer v. William, Gretz Brewing Co., Del. Super.*, 169 *A.* 2d 249.

It is argued in behalf of the minor plaintiff, however, that the modern trend of decisional law has progressed beyond the artificial and initially erroneous concept that actions for breach of warranty are actions upon a contract, and recognizes that in reality they are actions upon a tort. It is argued that in recognition of this many courts have sought means to avoid the result of the requirement of privity by an indulgence in legal fictions based upon concepts of fraud, agency, assignments, permitting the warranty to run with the goods, and a sanctioning of recovery where the goods, if defective, were inherently dangerous. It is argued that the modern trend of decisional law is that the remedies for injuries caused by defects in products should not depend upon the intricacies of the law of sales or contracts, but should be based

upon sound concepts of public policy and social welfare. We are asked to take the same approach.

Numerous cases are cited to us evidencing what is maintained to be the present majority view in this country. It appears to us that the great majority of the cases cited are cases of impurities in foods or beverages packaged and sold in sealed containers, or are cases involving products which, of themselves, are inherently dangerous if defects are contained within them.

With respect to defects or poisons or extraneous substances contained within foods or beverages, which, of themselves, make the consumption of such foods or beverages by humans harmful, it may well be that an exception to the rule of the requirement of privity on the basis of public policy exists in the reported decisions. Indeed, in our own decisions, reference is made to the possible existence of this exception. It seems to us, however, that the mere presence of an impurity in a product intended for human consumption, packaged and sold in a sealed container, possibly justifies an inference of negligence on the part of the manufacturer sufficient to support an action based on negligence. It has little pertinence to the existence of an implied warranty in favor of the ultimate consumer.

Many text writers and courts have criticized the retention of the requirements of privity of contract in suits brought for breach of implied warranties, and have adopted a variety of devices to avoid what is considered to be the harshness of an archaic requirement. See Prosser, The Assault Upon the Citadel, 69 *Yale Law Journal* 1099. We think, however, that Delaware has been committed by its courts to the common law rule governing actions for breach of implied warranty. A part of that rule is the requirement that there be privity of contract between the plaintiff and the defendant. It may well be desirable as a matter of public policy to impose absolute liability upon a manufacturer for injuries caused by defects in

his product but, if such is to be the public policy of this State, it must be made so by the Legislative rather than the Judicial Branch of the Government, the function of which is not to change established law but to apply it.

We conclude, therefore, that the trial court properly directed judgment for the defendant in the minor plaintiff's cause of action based upon breach of warranty.

The trial court also directed a verdict in favor of the defendant upon the causes of action based upon the negligence of the defendant by reason of the failure of the plaintiffs to prove a submissible case of negligence to the jury.

It is a fundamental rule that negligence of a defendant is never presumed from the mere fact of an injury. In all cases the plaintiff must affirmatively prove negligence on the part of the defendant. This rule is so fundamental as to require no citation of authority.

Proof of negligence may be made in a variety of ways. It may be established by direct testimony or by proof of other circumstances from which an inference of negligence follows logically. *Klair v. Mundy*, 5 *Boyce* 291, 92 *A.* 850, and *Fahey v. Niles*, 7 *Boyce* 454, 108 *A.* 135.

The proof of negligence by circumstantial evidence means merely the proof of certain circumstances from which another fact in issue, that of negligence, follows as a natural or very probable conclusion from the facts proven. It is necessary that the conclusion of negligence from the proven facts be the reasonable probability flowing from the admitted circumstances.

In order to prove the defendant's negligence by circumstantial evidence, however, it is necessary that the conclusion of negligence be the only inference possible from the admitted circumstances. If, therefore, the proven circumstances are as consistent with the absence of negligence as with the existence of negligence, neither conclusion can be said to have been

established by legitimate proof and the issue may not therefore be submitted to the jury. *Law v. Gallegher*, 9 *W. W. Harr.* 189, 190, 197 *A.* 479.

In the case before us, the plaintiffs argue that they have proven circumstances from which only one logical conclusion is possible, *viz.*, that the defendant was negligent in the course of its bottling operation, or in the delivery of the finished product, and that that negligence caused the minor plaintiff's injury. In opposition, defendant points out that it conducts its bottling operation in accordance with standards and rules prescribed by the Coca-Cola Company and followed generally by approximately 1100 Coca-Cola bottlers in the country. Defendant also points out that there is no proof in the record that the bottle in question, which broke under the application by the minor plaintiff of a bottle opener, contained at the time of its delivery to the Ciociola store any defect which could have caused the breakage.

We think that the method of bottling followed by the defendant, being as it was in conformity with the usual standards and practices required by the Coca-Cola Company of the licensed bottlers in the country, was the maintenance by the defendant of due care and a compliance with that standard of conduct toward the consuming public required of bottlers. 65 *C. J. S. Negligence* § 16(a).

In addition, the record falls short of proving that there could have been no damage to the bottle in question following the approximate twenty or so hours after the latest possible delivery of the bottle by defendant's delivery man, and the attempted opening of the bottle by the minor plaintiff. There is no precise proof as to the course through which the particular bottle went. It is as consistent to assume that it was left in a position in the store outside of the cooler in which it could have been struck or jostled by the Ciociola customers as that it was not. Under the circumstances, therefore, we

think the plaintiffs' conclusion that the bottle was delivered with a defect in it does not necessarily follow from the proof in this record.

Plaintiffs rely on three cases in support of their position under this heading of the appeal. In *Drury v. Armour & Co.*, 140 *Ark.* 371, 216 *S. W.* 40, the death of the plaintiff's wife was caused by the eating of poisoned sausage packed by the defendant company. In that case the proof established to a certainty that the sausage had not been tampered with following the packaging by the defendant, and that it had been eaten almost immediately by the deceased after purchase. Under these circumstances, the fact that the meat was poisoned permitted only one conclusion—that of negligent packaging on the part of the defendant.

Similarly in *Whitehorn v. Nash-Finch Co.*, 67 *S. D.* 465, 293 *N. W.* 859, in a suit brought by a plaintiff for injuries resulting from eating poisoned candy instituted against the retailer and the manufacturer, it was held that an inference of negligence on the part of the manufacturer arose from the mere presence of impurities in its food product under circumstances which justified the conclusion that such impurities would not ordinarily appear in such a product except by reason of the negligence of the manufacturer.

We think the two cited cases are clearly distinguishable from the one at bar. First, because of proof that there was no possible intervening cause putting the impurities into the food product sold and consumed and, second, that in the case of foods packaged and sold in sealed containers, any impurity in the food itself necessarily must be presumed to have been intruded by reason of the negligence of the packer. We think, therefore, that the *Drury* and *Whitehorn* cases are not authority in support of the plaintiffs' position.

Finally, plaintiffs cite *Ferrell v. Sikeston Coca-Cola Bottling Co., Inc.*, Mo. App., 320 *S. W.* 2d 292. At first glance

this case seems to support plaintiffs' position since it, too, involved a bottle of charged soda water delivered to plaintiff's place of business and stored in a closet, and thereafter, while being transferred by the plaintiff from the closet to a dispenser, exploded in her hand. It was held that since the plaintiffs' proof demonstrated that there was no possibility of any customer causing damage to the bottle in question, an inference of negligence on the part of the bottler was warranted.

It is apparent, however, from the emphasis made in the court's opinion that the court entertained doubt as to the sufficiency of the proof by reason of the constantly recurring and emphasized statement that the evidence in question was admitted without objection on the part of the defendant. The court then distinguishes its own decision of *Kees v. Canada Dry Ginger Ale*, 239 *Mo. App.* 1080, 199 *S. W.* 2d 76, in which, under somewhat similar circumstances, the court had refused to permit the submission of the issue of negligence to the jury. The facts in the *Kees* case were that the bottle in question was delivered to a semi-self-service grocery store; that the bottles were openly displayed in the store; that the bottles were not tampered with while they were on display in the store, and, finally, that the customers in the store waited on themselves. Under these circumstances, the court concluded that the bottles obviously could have been mishandled by customers and, hence, there was no compelling inference of negligence on the part of defendant.

We think the facts and circumstances of the case at bar more nearly approach those of the *Kees* case than those of the *Ferrell* case, which we think is not authority for the plaintiffs' position in the case at bar.

Plaintiffs argue that a filled Coca-Cola bottle is an inherently dangerous object and that they are therefore entitled to the benefit of the rule which imposes a higher standard of care—indeed, almost that of an insurer—upon the defendant. *Restatement of Torts*, § 395; *Gorman v. Murphy*

*Diesel Co.*, 3 *Terry* 149, 29 *A.* 2d 145. The argument fails, however, because a glass bottle is not inherently a dangerous instrumentality. *Slack v. Premier-Pabst Corp.*, 1 *Terry* 97, 5 *A.* 2d 516.

We conclude, therefore, that the trial court was correct in directing a verdict for the defendant on the issue of negligence on the part of the defendant.

 As a separate cause of action, plaintiffs rely on the doctrine of *res ipsa loquitur.* Reliance is primarily placed upon *Williams v. General Baking Co.*, 9 *Terry* 104, 98 *A.* 2d 779, in which case a plaintiff was given the benefit of the doctrine as defined in *Delaware Coach Co. v. Reynolds*, 6 *Terry* 226, 71 *A.* 2d 69.

The doctrine of *res ipsa loquitur* has been followed consistently by Delaware courts. See *Edmanson v. W. & P. Traction Co.*, 2 *W. W. Harr.* 177, 120 *A.* 923; *Thompson v. Cooles*, 7 *W. W. Harr.* 83, 180 *A.* 522; *Starr v. Starr*, 5 *W. W. Harr.* 556, 170 *A.* 924, and *Slack v. Premier-Pabst Corp., supra.*

In the *Slack* case the rule was stated to be that if the cause of the injury was in the exclusive management and control of the defendant, and if the result—that is, the injury—was so unaccountable that the only fair inference of the cause was the negligence of the defendant, the doctrine of *res ipsa loquitur* was applicable to establish the negligence of the defendant.

In the *Delaware Coach Co.* case, however, the rule was modified to remove the requirement of exclusive control by the defendant and restated to be that if the facts of the case warrant an inference of negligence of such force as to call for an explanation or rebuttal from the defendant, that an issue for submission to the jury had been created. It seems to us that the rule announced in the *Delaware Coach Co.* case by

this Court's predecessor is not too dissimilar to the rule permitting an inference of negligence to be drawn from circumstances which we have discussed heretofore. What we have said, therefore, with respect to that argument is equally applicable to the argument for the application of the doctrine of *res ipsa loquitur*.

The circumstances of this case do not present an inference of negligence of such force as to call for an explanation or rebuttal by the defendant. The defect in the bottle, if it existed at the time the minor plaintiff applied the bottle opener, could well under the evidence have been caused by jostling or hitting the bottle after it was delivered to the Ciociola store. Furthermore, since the minor plaintiff testified that she examined the bottle before trying to open it and noticed no defect or crack, it is an equally fair inference that there was no defect apparent upon inspection and that the bottle broke by means of an unequal application of pressure, or by reason of a latent weakness in the glass itself. None of these inferences calls for an explanation from the defendant for it was not the manufacturer of the bottle.

We think, therefore, a directed verdict for the defendant upon the count based on *res ipsa loquitur* was proper.

Finally, plaintiffs argue that the trial court committed prejudicial error in refusing to permit them to offer evidence as to the custom and practices as to inspections followed in bottling plants other than Coca-Cola. The alleged error took place in the course of the examination of the defendant's president called by the plaintiffs as in cross-examination under Rule 43(b) of the Superior Court, *Del. C. Ann.* Plaintiffs questioned the witness as to defendant's bottling operation and, in particular, with respect to the manner of inspection of bottles for defects. Upon re-examination, after questioning by the defendant, the witness was asked concerning methods followed by other bottlers not bottling Coca-

Cola. This line of questioning was objected to and the objection sustained. The ruling is now urged as reversible error.

The difficulty with plaintiffs' argument is that, in reality, they made no offer of proof as to the custom and usage in other bottling plants, and of their similarity with the defendant's operations. The ruling was made upon a question in cross-examination of a witness who had been called for an entirely different purpose. We think, therefore, the question argued is not before us.

The judgment of the Superior Court is affirmed.