Roland P. MOORE and Judy
L. Moore, Plaintiffs

v.

ANESTHESIA SERVICES, P.A., Chris-
tiana Care Health Services, Inc., Dela-
ware Vascular Associates, P.A., Sonya
Tuerff, M.D., Matthew Cooper, M.D.,
Michelle Pesek–McCoy, M.D., United
States Surgical Corporation, Tyco
Healthcare Group, LP, Ethicon, Inc.,
Ethicon Products Worldwide, and
Johnson & Johnson Co., Defendants.

Civ. A. No. 06C–01–013–JOH.

Superior Court of Delaware,
New Castle County.

Submitted: Nov. 12, 2008.
Decided: Dec. 8, 2008.

Robert J. Leoni, Esquire, of Shelsby & Leoni, Wilmington, DE, for the plaintiffs.

John D. Balaguer, Esquire, of White & Williams, Wilmington, DE, for defendants Sonya Tuerff, M.D., and Delaware Vascular Associates, P.A.

Robert S. Goldman, Esquire, of Phillips Goldman & Spence, Wilmington, DE, and Michael L. Walden, Esquire, of Shook Hardy & Bacon, LLP, Kansas City, MO, for defendants United States Surgical Corporation and Tyco Healthcare Group, LP.

David P. Primack, Esquire, of Drinker Biddle and Reath LLP, Wilmington, DE, and Kenneth A. Murphy, Esquire, of Drinker Biddle & Reath LLP, Philadelphia, PA, for defendants Ethicon, Inc., Ethicon Products Worldwide, and Johnson & Johnson.

## OPINION

HERLIHY, J.

The Court has before it three motions for summary judgment. Plaintiffs have brought suit claiming medical negligence or defective product. The product at issue is a suture used in plaintiff Roland Moore's surgery. Earlier in this case, an apparent factual dispute developed over which manufacturer supplied the suture.

After previously denying summary judgment motions regarding that dispute, additional discovery was undertaken. It now appears that the full factual record has been developed. That has prompted one manufacturer, U.S. Surgical Corp. to move for summary judgment arguing there is no basis to find it supplied the suture plaintiffs allege was defective. Plaintiffs have moved for partial summary judgment asking this Court, in effect, to declare U.S. Surgical's suture was not used. The other suture manufacturer, Ethicon, Inc., does not oppose U.S. Surgical's motion. Its own motion for summary judgment contends that plaintiffs cannot meet the necessary elements of a circumstantial case of defect. Therefore, Ethicon argues summary judgment should be awarded to it now.

The Court finds the factual record warrants granting U.S. Surgical's motion which renders plaintiff's motion moot. For reasons explained herein, summary

judgment is not warranted for Ethicon's motion.

### Factual Background

On June 23, 2004, Roland P. Moore ("Moore") was admitted to Christiana Hospital ("Christiana") to undergo carotid endarterectomy. The surgery was performed by Dr. Sonya Tuerff. The procedure required a wiry, thin 6–0 suture be applied to Moore. The suture came in a sealed bag, which was opened by a nurse and handled by Dr. Tuerff and possibly the doctor's surgical assistant. Dr. Tuerff testified that this suture, as was the common medical practice, came attached with two needles on both ends. Dr. Tuerff stated that she checked the suture for any manufacturing defects.[1] From her deposition, she has surmised that there was potential defect with the suture used in Moore's surgery.[2] However, Nurse Judith Lind–Maloney testified that she recalled Dr. Tuerff remarking that she may have tied the suture too tightly.[3]

In any event, the surgical wound was eventually sealed and the procedure appeared to have been successful. Moore was then transferred to the Post Anesthesia Care Unit ("PACU"). However, while in the PACU, Moore became hypersensitive and severely agitated. Subsequently, Moore lost consciousness, had to be reintubated, and required another surgery. The second surgery revealed that Moore had a large hematoma at the surgical sight. Plaintiffs' allege that the hematoma and the need for emergency surgery resulted from either the defective suture or medical malpractice. After the second surgery, it was determined that Moore had suffered a stroke which resulted in paralysis and diminished mental capacity. He will require the assistance of long term care.

Unfortunately, Christiana personnel discarded the suture used in the endarterectomy. Without the actual suture used in the surgery, a dispute between Ethicon and U.S. Surgical arose, with each side claiming it was the other company that produced the suture used for Moore's surgery. In February 2008, this Court could not make a determination on summary judgment regarding whose suture was employed, in large part, because these facts remained in dispute or needed to further developed.[4] The fundamental factual conflict was that Dr. Tuerff said it was an Ethicon suture but a later Christiana bill listed the suture as U.S. Surgical.

Since that time, new information has been brought to the Court's attention. Specifically, Christiana has now moved to amend some of its earlier discovery responses. In an earlier response, it claimed it had both Ethicon and U.S. Surgical sutures available for use when Moore had his surgery. Now Christiana, through an affidavit from Robert Martin ("Martin"), has stated that U.S. Surgical sutures were not available on the date of Moore's surgery.[5] Instead, it has now determined the earliest date that U.S. Surgical sutures would have been used at Christiana would have been July 11, 2004, roughly two weeks after Moore's surgery date.[6] More affidavits have been provided. Scott Huntley, a

1. Plaintiff's Resp. to Second Motion for Summary Judgment, p. 1–2.

2. *Id.*

3. Deposition of Judith Lind–Maloney, Tr. 97:1–19.

4. *Moore v. Anesthesia Services, P.A.,* 2008 WL 484452 (Del.Super.Ct. Feb. 15).

5. Plaintiff's Motion for Partial Summary Judgment as to Identification of Suture and Suture Manufacturer, at ¶ 5.

6. *Id.* at Ex. E, Affidavit of Robert Martin.

sales representative for U.S. Surgical, and Christopher Miller, a marketing and sales employee of U.S. Surgical, have provided statements asserting that no U.S. Surgical sutures were available to Christiana on the date of Moore's surgery.[7]

In addition to Christiana's discovery "correction," Martin clarified the factual problem of Moore's billing statement from his surgery. When the Court had ruled against summary judgment in February, the medical bill disclosed during discovery in 2006 listed the suture used at surgery was a U.S. Surgical brand. In an affidavit, Martin stated that this "error" was due to the fact that the computer bill was generated in March 2006 and reflected the products available to Christiana at that date, not June 23, 2004. Christiana's counsel has also admitted and acknowledged this mistake to the Court during oral arguments. Its counsel also represented to this Court that it was now acknowledging that the suture in question was an Ethicon brand and repudiated a previous discovery response which represented uncertainty about the identity of the suture manufacturer.

### Parties' Contentions

In light of the new factual record, U.S. Surgical argues that it was chronologically impossible for its sutures to have been used at Christiana when Moore's surgeries occurred. It contends this finding is buoyed by the three affidavits, which tend to establish a date two weeks following Moore's surgery as the first occasion that U.S. Surgical sutures may have been available to operating doctors at Christiana.

Moore has moved for partial summary judgement asking this Court for a declaration that U.S. Surgical's suture was not the one Dr. Tuerff used on him and that it was Ethicon's. He relies on the same record that U.S. Surgical employs.

Ethicon has adopted a unique response to these motions. It does not oppose U.S. Surgical's motion. It opposes, however, Moore's motion even though the result is the same. Of course, granting U.S. Surgical's motion is not a judicial *declaration,* as Moore seeks. However, if the Court granted U.S. Surgical's motion, then the suture would necessarily become Ethicon's. In disputing Moore's motion, on the other hand, Ethicon challenges the veracity of the affidavits from Christiana and U.S. Surgical and points, again, to the Christiana bill that was generated in 2006.

Ethicon's motion, however, is more focused on plaintiffs' inability to present a case of product defect. First, the suture in question was not retained. Second, it asserts plaintiffs are unable to exclude the possibility that one or more people in the operating room mishandled or damaged the suture, including Dr. Tuerff. Third, Ethicon points to the fact that plaintiffs have alleged Dr. Tuerff committed medical negligence. Under these circumstances, Ethicon asserts Moore cannot satisfy the requirement in a circumstantial claim of product defect that all other reasonable inferences are excluded.

Anticipating Moore's response to these contentions, Ethicon argues that *res ipsa loquitur* has no applicability to this case. It argues that *res ipsa loquitur* is only available when the plaintiff can point to one defendant and assign that defendant with a "greater probability of negligence" than other defendants. Ethicon disputes plaintiffs ability to meet this burden.

In response to Ethicon's motion, Moore argues he can meet his burden of proof in regard to the alleged defect in the suture. Moore also contends he has made a prima

---

7.  *Id.* at Ex. H and Ex. I.

facie case for negligence to withstand summary judgment. Furthermore, Moore argues that *res ipsa loquitur* is applicable to this case.

### Applicable Standard

In order for the moving party to obtain summary judgment, that party must bear the burden of showing the Court that no genuine issue of material fact is present and that it is entitled to judgment as a matter of law.[8] When considering a motion for summary judgment, the Court must view the facts and circumstances in a light most favorable to the non-moving party.[9] However, if the moving party shows no conflict, the burden then shifts to the non-moving party to show some material dispute in the factual record.[10] The Court is required to examine the whole record including pleadings and affidavits.[11] Summary judgment is improper when a material fact or an inference that might be drawn from a material fact is in dispute.[12] Summary judgment is also inappropriate when the record needs further development.[13] When the moving party can establish that there is no genuine issue of material fact, summary judgment may be appropriate.[14]

### Discussion

At this juncture there are three issues to be decided: (1) whether the identity of the suture manufacturer can or should be determined through summary judgment; (2) whether the plaintiff can establish a prima facie case of negligence against the suture manufacturer; and (3) whether *res ipsa loquitur* is potentially applicable in this case.

### The Suture

■ The Court allowed and encouraged the parties to conduct more discovery following the decision of February 15, 2008 to resolve the factual issue of whose suture was used during Moore's surgery. Now that this second phase of discovery is completed, U.S. Surgical has, again, asked to be removed arguing that the record clearly precludes any possibility that its suture was used. Ethicon, however, maintains there are still disputed facts concerning the identity of the suture manufacturer but advances that argument only as to plaintiffs' motion. Specifically, Ethicon does not accept the affidavits as a complete renunciation of Moore's Christiana bill that was generated in 2006.[15] Ethicon also contends the credibility of the affidavits is in question because they offer conflicting dates of shipments and sales, even though every date that is listed occurred over two weeks after Moore had his surgery. Finally, Ethicon cites an early discovery response from Christiana in which the hospital refused to deny the possibility that U.S. Surgical sutures might have been used by Christiana. However, that discovery response has been flatly repudiated. Ethicon maintains, regardless of this new admission, that a jury could re-

8. *Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1979).

9. *Windom v. William C. Ungerer, W.C.*, 903 A.2d 276, 280 (Del.2006).

10. *Moore* at 680.

11. *Oliver B. Cannon & Sons, Inc. v. Dorr–Oliver Inc.*, 312 A.2d 322, 325 (Del.Super.1973).

12. *Ebersole v. Lowengrub*, 180 A.2d 467, 468 (Del.1962).

13. *Id.* at 468–69.

14. *Pryor v. Aviola*, 301 A.2d 306, 308 (Del.Super.1973).

15. Ethicon's Resp. to Plaintiffs' Motion for Partial Summary Judgment, at 3.

ject the affidavits and responses by and through Christiana and determine that the 2006 bill recording Moore's 2004 surgery documented the types of products used Christiana personnel during the surgery.

The Court does not agree with Ethicon's arguments and finds that summary judgment for U.S. Surgical is proper. Now that the Christiana has moved to repudiate its prior discovery responses, U.S. Surgical, as the moving party, has brought forward a sufficient record which resolves the factual identity of the suture as Ethicon.[16] When the Court last considered the identity of the suture manufacturer on summary judgment, it did not have the affidavits which are now in the record. The affidavits all attest to dates that are two weeks following Moore's surgery. Ethicon claims the dates create a factual dispute because they are different and are categorized as "sale" and/or "shipment" dates.[17] But more importantly, these affidavits also clear up the issue of the 2006 billing error.

At this moment, the Court is satisfied that U.S. Surgical and Christiana have done everything in their capability to deny, amend, and/or repudiate any discovery materials that have tended to suggest that U.S. Surgical sutures were available during Moore's surgery. Thus, for purposes of summary judgment the Court is satisfied that as the moving party, U.S. Surgical has demonstrated no genuine issue of fact exists with regard to the suture being Ethicon's.

Accordingly, the burden to show a genuine factual issue exists moves to Ethicon. It has not done so. It contends a conflict exists in the affidavits seeking to explain the 2006 billing errors. Ethicon has disputed the content of the affidavits because the dates differ with regards in dates of sales or shipment. The Court, however, is not impressed with the fact that affidavits are not mirror images of each other with dates of shipment and sales. The affidavits provide uncontroverted agreement that U.S. Surgical sutures were not available at Christiana until sometime after the first week in July of 2004. Moore's surgery was June 23, 2004. The affidavits are unambiguous on the basic time line of events and shall be accepted as true.[18] Because these affidavits have discredited the 2006 bill entirely, Ehticon can no longer rely on it to survive a motion for summary judgment. If that were the case, Ethicon could use the discovery mistake that Christiana committed by generating the bill to stall these proceedings in order to create a "conflict". Under *Super. Ct. Civ. R.* 26(e)(2), Christiana was required to reform and/or repudiate its discovery responses when it became aware they were incorrect. It would constitute knowing concealment had they not disclosed it to the parties and the Court. Ethicon, throughout these proceedings has maintained its inability to ascertain the identity of the suture manufacturer [19] but it has never directly attacked *U.S. Surgical's* motion for summary judgment.[20]

---

**16.** Christiana did not revise one of its earlier responses to a request for admissions from Ethicon. In short, the request asked if there was any evidence that the questioned suture was U.S. Surgical's. Because the bill (which has caused needless controversy, lawyer, court time, and expense) listed the suture as U.S. Surgical's, Christiana believes it cannot amend that particular response.

**17.** *Id.*

**18.** *Plant v. Catalytic Constr. Co.,* 287 A.2d 682 (Del.Super.Ct.), *aff'd* 297 A.2d 37 (Del.1972).

**19.** Defendant's Response to Plaintiff's Motion for Partial Summary Judgment, at 1.

**20.** *Id.* at Exhibit A. The pertinent part reads: "Even so, Ethicon would not oppose U.S. Surgical's efforts to extract itself from this case. Accordingly, Ethicon has not created any obstacle to the resolution of the process

Ethicon's position boils down to this: It does not oppose U.S. Surgical's motion which, if granted, removes that defendant from this case. But it makes a spurious effort to say a factual conflict exists, when it comes to Moore's motion based on the same record as U.S. Surgical, by attacking the credibility of the three affidavits. This is not the competent evidence it has to present to meet its burden that a *genuine* issue of material fact exists. It cannot continue to use the now discredited bill to oppose Moore's motion but overlook it when not opposing U.S. Surgical's motion.

The Court determines that the record before it does enable it to grant summary judgment. That same record also means the Court should award summary judgment. U.S. Surgical's motion for summary judgment is granted. This result moots the plaintiff's motion.[21]

### The Negligent Manufacturing Claim and Res Ipsa Loquitur

With U.S. Surgical removed, the remainder of this opinion centers on the issues of negligent manufacturing and *res ipsa loquitur* as they pertain to Ethicon and Moore. Ethicon has moved for summary judgment with two principle arguments: (1) Moore's case against Ethicon, which relies entirely on circumstantial evidence, cannot succeed under current Delaware case law and (2) assuming the Court finds Moore can rely on circumstantial evidence alone, it cannot allow him to use the doctrine of *res ipsa loquitur* given the facts of this particular case.

*A*

Delaware law has held a plaintiff asserting circumstantial evidence to prove negligence must show that "negligence be the only inference possible from the admitted circumstances."[22] Ethicon argues the application of this rule should now remove it from the present lawsuit. Ethicon notes that Moore has admitted it will rely upon circumstantial evidence through *res ipsa loquitur* (to be discussed below) to state a claim for negligent manufacturing because of the discarded suture.

Ethicon argues these rules of circumstantial evidence in Delaware have sought to prevent juries from having to guess at whether or not the defendant's alleged negligence was the cause of the plaintiff's injury when there are other legitimate reasons to believe that a plaintiff's injuries might have stemmed from some actor or independent force other than the defendant.[23] Thus, the burden on the plaintiff has always been steep. Traditionally, in order to state a successful claim to avoid summary judgment, the plaintiff has had to negate almost all other potential causes of negligence besides that of the single defendant.[24]

Ethicon contends plaintiffs cannot meet this burden. Specifically, Ethicon points to two matters in the record. One is Moore's complaint which makes multiple claims of negligence against the medical staff, Christiana, and Ethicon. Ethicon argues that plaintiffs cannot maintain their negligent manufacturing action while also

---

here. Ethicon simply has no objection to U.S. Surgical's summary judgment motion."

**21.** The Court cautions the parties from attempting to resuscitate this matter at trial. The issue is no longer a jury issue and the jury is not to hear evidence on anything about a U.S. Surgical suture.

**22.** *Ciociola v. Del. Coca–Cola Bottling Co.,* 172 A.2d 252, 257 (Del.1961).

**23.** *Law v. Gallegher,* 197 A. 479, 488 (Del. 1938).

**24.** *See generally, Ciociola* and *Delaware Coach Co. v. Reynolds,* 71 A.2d 69 (Del.1950).

asserting negligence on the part of the doctors and nurses who conducted his surgery. Ethicon has posited many kinds of negligence by other parties to Moore's surgery that are well within the realm of possibility: (1) failing to properly tie the suture with the required number of knots, (2) tying the suture too tightly creating unnecessary tension, (3) damaging the suture with medical forceps or other equipment, (4) failing to check the quality of the suture before surgery, (5) mishandling by the nursing staff or the surgical assistant,[25] (6) or exhibiting a lack of general medical care or skill during the surgery. Ethicon argues that plaintiffs' failure to drop the other defendants in this matter establishes that the plaintiffs cannot and have not ruled out the other reasonable inferences of negligence.

Ethicon also cites a portion of Moore's proffered expert testimony about the suture:

> If Dr. Tuerff had kept the suture material that she alleges she cut off of the alleged interrupted suture and not irresponsibly discarded it, then that material would have been available to analysis e.g. via Scanning Electron Microscopy (SEM) to determine the actual nature of the failure.[26]

Its argument is that discarding the suture means Moore is unable to say what was the actual cause of the failure. This, Ethicon argues, means Moore cannot prove a manufacturing defect.

Ethicon's third major argument is that this case, if plaintiffs have their way, could implicate *res ipsa loquitur*, and its contention is that it is inapplicable to this case. Ethicon asserts that plaintiffs cannot meet the burden of *D.R.E* 304(b). Rule 304(b) is the codified test established by the Delaware Supreme Court for trial judges to employ when considering the potential use of *res ipsa loquitur*. The pertinent part reads:

(1) The accident must be such as, in the ordinary course of events, does not happen if those who have management and control use proper care; and

(2) The facts are such as to warrant an inference of negligence of such force as to call for an explanation or rebuttal from the defendant;

(3) The thing or instrumentality which caused the injury must have been under the management or control (not necessarily exclusive) of the defendant or his servants at the time the negligence likely occurred; and

(4) Where the injured person participated in the events leading up to the accident, the evidence must exclude his own conduct as a responsible cause.

Ethicon argues plaintiffs cannot establish elements (1) and/or (3). It contends that the first fact effectively requires Moore to establish that there is "greater probability" that Ethicon's suture was the cause of Moore's injuries and not the negligence of other actors. Nor does Ethicon believe that Moore will able to meet the control element in factor (3). This argument, again, stems from the fact that the medical staff assigned to Moore's surgery was in control of suture after it was taken out of its packaging. Consequently, Ethicon concludes without a *res ipsa loquitur* instruction, Moore's claim necessarily fails.

---

**25.** The physician's assistant in the operating suite has not been found and, obviously, deposed. Counsel represented at oral argument that Christiana subsequently terminated him. Efforts to locate him are ongoing.

**26.** Ethicon's Summary Judgment Motion, Exhibit D.

## B

Moore acknowledges the legal precedents and rules of law documented by Ethicon. However, he argues that his case is factually and procedurally different than previous cases which have relied on circumstantial evidence to prove negligence in Delaware. He acknowledges his need for circumstantial evidence to prove his case and that *res ipsa loquitur* is the way in which he would meet his burden. Moore also freely acknowledges, at this point, he cannot eliminate the potential scenarios which Ethicon has asserted as other possible sources of negligence. While Moore admits these points, he contends this is not fatal to his case at summary judgment.

The lynchpin of Moore's argument rests on his viewpoint that this case has disputed facts but, ultimately, these facts will be boiled down by the jury into an "either/or" decision with regard to liability. Moore contends the jury, as in any other basic medical malpractice case, will have to determine whether the doctors, nurses, or hospital were negligent. If not, Moore argues the jury would then, by process of elimination, have no other party left to infer negligence upon except Ethicon for negligent manufacturing of the suture (assuming the Court finds *res ipsa loquitur* applicable here).

This position is, for the moment, supported by his expert. That expert, Edward Elson, has offered several opinions about what may have happened here. Among them were potential mistakes by Dr. Tuerff. Elson has opined about the desirability of actually testing the suture, but he also says:

> If Dr. Tuerff was in no way responsible for the failure of the suture line and if those assisting in the surgery did not in any way contribute to the failure, then the proximate cause of the event involving Mr. Moore is the failure of the polypropylene 6–0 monofilament suture, and the reasons for that failure to a reasonable degree of probability were either an inclusion in the polymer melt that was entrapped in the monofilament thereby weakening it, or a non-consistent manufacturing process, e.g. non-uniform extrusion speed, twisting of the suture or kinking of the suture.[27]

Reviewing Elson's proffered opinions, the Court is satisfied that in this instance, Moore can proceed to trial on an "either/or" basis.

Next, Moore disputes Ethicon's argument that a plaintiff cannot maintain multiple claims of negligence against multiple defendants and also employ circumstantial evidence at the same time. Moore argues that, in cases where a plaintiff cannot pinpoint who or what was the cause of negligence of his injuries, a plaintiff must include and make claims against *all* potential tortfeasors in order to ensure that the Court has before it all potential negligent parties. Moore turns to *Ciociola* as an example of the pitfalls that may befall an unwary plaintiff attempting to use circumstantial evidence to prove a defective product while not having all the potential tortfeasors or excluding other potential causes.

In *Ciociola*, the plaintiff was a young girl whose parents owned a store that sold Coca–Cola products. On Thanksgiving day, she was given a soda that had been stored in her parent's cooler which had just been delivered the day before. When the girl attempted to open the bottle with a standard bottle opener, the glass bottle shattered and caused her to tear a tendon in her hand. This Court directed a verdict in favor of the defendant based on the rule

27. Ethicon's Summary Judgment Motion, Exhibit D.

that circumstantial evidence can be used to meet the burden of proof only in the event the plaintiff can negate all other possible sources of negligence. The Supreme Court affirmed, noting:

> [T]he record falls short of proving that there could have been no damage to the bottle in question following the approximate twenty or so hours after the latest possible delivery of the bottle by defendant's delivery man, and the attempted opening of the bottle by the minor plaintiff. There is no precise proof as to the course through which the particular bottle went. It is as consistent to assume that it was left in a position in the store outside of the cooler in which it could have been struck or jostled by the Ciociola customers as that it was not. Under the circumstances, therefore, we think the plaintiffs' conclusion that the bottle was delivered with a defect in it does not necessarily follow from the proof in this record.[28]

Moore argues that the Ciociolas' claim failed, in large part, because they could not eliminate their own potential contributory negligence and did not bring other potentially liable parties into the lawsuit like the delivery company. Unlike *Ciociola*, Moore argues he has brought into the lawsuit all potential parties that might be found liable. He asserts this is necessary because, had he not done so, his case could be dismissed through summary judgment. Additionally, he contends bringing all these parties is necessary in order for him to make an argument for *res ipsa loquitur*, particularly the element of control.

In sum, Moore asserts his need to keep in all the potential parties, including Ethicon, in order maintain all potentially valid claims that will, ultimately, depend on how the jury resolves the factual disputes concerning Moore's first surgery. If the jury determines that one or more of those who participated in his surgery were negligent, Moore would not need circumstantial evidence against Ethicon. The case would proceed as a typical medical negligence case. However, in the event the jury does not find the medical staff negligent, Moore contends that he would be entitled to a *res ipsa* instruction.

Consequently, the remainder of this decision considers the legal issues that would be triggered should the jury, in its "either/or" decision, decide that there was no medical malpractice.

### *Res Ipsa Loquitur*

Before delving into *res ipsa loquitur* and this specific case, it is critical to first understand what the test for *res ispa loquitur* is, what it does, what it does not do, and the policy behind the doctrine's acceptance in Delaware. While it is important to keep in mind that Moore is asking for *res ispa loquitur* on a conditional basis (i.e. only when the jury decides no negligence on the medical professionals), the Court sees no reason why a conditional *res ipsa loquitur ·* instruction would not have to meet the same requirements of a traditional *res ipsa loquitur* case.

### A

*D.R.E* 304(b) is the controlling rule of evidence a trial court is required to employ in cases where *res ipsa loquitur* is potentially applicable. Again, this test is being applied under the assumption of no negligence of the medical staff.

The first requirement of Rule 304(b) requires this Court to find that the accident that occurred would not normally happen but for some type of negligence. Here, there are very little "proven facts".

---

28. *Ciociola* at 258.

Some facts, however, are not disputed. All parties admit that Moore was generally healthy before this surgery was conducted. The surgery was completed and Moore was taken out to the PACU where he initially appeared fine, but shortly after experienced the extensive bleeding that lead to his emergency surgery. At this juncture, the Court is convinced on these undisputed facts that such occurrences do not normally happen without negligence. There is nothing in the record before the Court yet to suggest the removal of plaque along the carotid artery was an inherently dangerous or risky surgery for a plaintiff like Moore.[29]

These facts to date also meet the second requirement of Rule 304(b) which requires the trial court to ask whether the facts warrant some sort of explanation from the defendant. If there is no negligence from the medical staff, the Court is satisfied that the undisputed facts could compel a reasonable person to ask for some answer from Ethicon.

■ The third element is that the thing or instrumentality was under the control of the defendant. In Delaware, exclusive control is not required.[30] Assuming *no* medical malpractice or mishandling of the suture by Christiana personnel occurred, the Court is satisfied that Moore, at this stage, has made out a sufficient argument of Ethicon's control of the suture.[31] Moore contends this is why he was compelled to bring all potential tortfeasors into this lawsuit. Consequently, he has argued that the jury might find no negligence based on the testimony of those involved

with the surgery. Moore has also asserted that he can account for all the parties that were in the operating room with the exception of the physician's assistant. It is unclear what contact, if any, he had with the suture. In this case, Moore will have to account for the period in which the suture was removed from its packaging to the moment Moore began to experience significant bleeding. If this is accomplished, the Court finds that the control element would be established.

Finally, the last element requires that the plaintiff did not contribute to the negligence that caused his injury. Moore was under anesthesia during the surgery; he was not contributorily negligent.

Therefore, the Court finds that Moore's argument for a *res ipsa* instruction would be proper, so long as the facts were decided by the jury in a particular manner. Thus, the final issue to be decided by this Court is whether *res ipsa loquitur* can be applied for cases such as this one, that are dependent on an "either/or" determination by the jury. Presently, the Court is not aware of any Delaware case law which has considered this particular legal issue. This case, therefore, presents an apparent issue of first impression. Hence, the Court proceeds by reviewing the settled case law to obtain a firm foundation of *res ipsa loquitur* before evaluating the circumstances of this particular case.

**B**

■ The doctrine of *res ipsa loquitur* has been accepted by Delaware courts as

---

29. Dr. Tuerff and Christiana are apparently claiming they were free of negligence and that the suture was defective. Their disposal of the suture raises the interesting issue of spoilation.

30. *Ciociola* at 259 (referencing *Delaware Coach* ).

31. This conclusion at this point does not preclude, upon motion from Ethicon, at the close of Moore's case to re-examine if he has met his burden or suffers a directed verdict on his claim against Ethicon.

an adequate way for plaintiffs seeking to bring negligence claims solely on circumstantial evidence provided that the facts and circumstances of the occurrence in question would lead to an inference of negligence by a reasonable person.[32] However, *res ipsa loquitur* is not a magic bullet which provides automatic victory for a plaintiff and his cause. Even in cases that apply *res ipsa loquitur*, the fundamental rule of negligence still applies: a defendant can never be presumed negligent simply because of the result of an injury to the plaintiff.[33] The doctrine does, however, allow a plaintiff to avoid a directed verdict at the end of its case in chief.[34] When properly applied, *res ipsa loquitur* allows a jury to infer, if it so chooses, negligence on the part of the defendant "from proof of the injury and surrounding circumstances".[35] Finally, "[i]t is necessary that the conclusion of negligence from the *proven facts* be the reasonable probability flowing from the admitted circumstances" and that "the conclusion of negligence be the only inference possible from the admitted circumstances." [36] (emphasis added). At summary judgment, the Supreme Court has held that it is the defendant's burden to "produce evidence which will destroy the inference of negligence, or so completely contradict it that the jury could not reasonably accept it." [37] It also held that "the question of the applicability of the doctrine of *res ipsa loquitur* should be determined at the close of the plaintiff's evidence" when evaluating whether there should be a directed verdict or whether the case should go to the jury.[38]

Ethicon has asked this Court to be removed because Moore has not whittled down his claim of negligence to one defendant—the defendant whose negligence was the primary cause of the injury. The Court, after reviewing Delaware case law, finds that nothing in this decision upsets any of the settled rules upon which Ethicon has relied. The Court simply holds, at summary judgment, those rules cannot yet be applied, especially while Moore is relying on *res ipsa loquitur*. According to case law, Ethicon must "destroy" or "so completely contradict" Moore's alleged facts. It has not done so. Ethicon wants the Court to make its evaluation now; the Court holds that it must reserve those questions until after the plaintiff has presented his case at trial.

The Court also finds that it could adequately instruct a jury on whether or not to apply *res ipsa loquitur* to this particular case. Moore argues that there will be contentious testimony and evidence at trial that will revolve around the facts and circumstances of the surgery conducted by Dr. Tuerff. Furthermore, Moore contends that one of the first disputes the jury will decide will be whether the medical staff was negligent. The Court agrees and also believes it can fashion a jury charge that would direct a jury to fairly consider the factual disputes before considering any *res ipsa loquitur* application. The Court notes this practice has already been in established in New Jersey for over twenty five years.[39] The practice has been coined

---

**32.** *Delaware Coach Co. v. Reynolds*, 71 A.2d 69, 73 (Del.1950).

**33.** *Ciociola* at 257.

**34.** *General Motors Corp. v. Dillon*, 367 A.2d 1020, 1023 (Del.1976). *See also*, D.R.E 304(c)(2).

**35.** *Id.*

**36.** *Ciociola* at 257.

**37.** *Delaware Coach* at 75.

**38.** *Id.*

**39.** *Roper v. Blumenfeld*, 309 N.J.Super. 219, 706 A.2d 1151, 1157 (App.Div.1998)

as the "conditional" *res ipsa* instruction. A New Jersey Court has described the process in the following manner:

> [i]f the evidence presents a factual issue as to how an accident occurred, and the res ipsa loquitur doctrine would be applicable under only one version of the accident, the court should give a 'conditional' res ipsa loquitur instruction, under which the jury is directed first to decide how the accident happened and to consider res ipsa loquitur only if it finds that the accident occurred in a manner which fits the doctrine.[40]

The Court finds that a jury instruction fashioned in that manner would be potentially applicable to this case. Moore, however, would have to fulfill the requisite conditions needed for the *res ipsa* instruction upon completion of his case in chief.

Finally, although this opinion has focused primarily on the "either/or" distinction of this particular case, the jury could ultimately find no negligence on either the medical staff or the suture manufacturer.[41] The instructions would afford that opportunity for the jury.

### C

■■■■ This opinion has centered primarily on the legal rules of case law. However, the Court also believes that this decision is grounded in equally compelling public policy considerations. If the Court were to grant Ethicon's motion based on the reasoning that the plaintiff's case fails because it relies on *res ipsa loquitur* and does not pinpoint one defendant as the negligent party, then the Court would also have to dismiss all of the other parties on the same reasoning once it removed Ethicon. Such a result would be inconsistent and would prevent a plaintiff from making a *res ipsa* claim when there are multiple defendants.

■■ The doctrine of *res ipsa loquitur* was established for plaintiffs who, through no fault of their own, are unable to prove their case except for the occurrence of the accident.[42] Although a plaintiff does not win by simply receiving a *res ipsa loquitur* instruction from the Court; *res ipsa loquitur* does effectively ease the plaintiff's initial burden of making a case and withstanding a directed verdict for the defendant.

However, the Court does not grant this leeway to any plaintiff. Moore has plead a reasonable scenario in which there might have been a defect in Ethicon's suture and has sufficiently shown this Court he may, during the course of trial, be able to meet all of the elements of the *D.R.E* 304(b). The Supreme Court has surmised that *res ipsa loquitur* "has a flexibility in application which depends upon the Court's evaluation of the situation presented."[43] At this juncture, the Court finds it prudent to exercise that "flexibility" of *res ipsa loquitur* for this particular case. Moore has presented a reasonable scenario in which the instruction might be applicable to this case. Consequently, Ethicon's motion must be denied.

### *Conclusion*

For the reasons stated herein, U.S. Surgical's motion for summary judgment is

---

**40.** *Id.* (citing *Allendorf v. Kaiserman Enters.,* 266 N.J.Super. 662, 630 A.2d 402 (App.Div. 1993)).

**41.** *Cuonzo v. Shore,* 958 A.2d 840, 844 (Del. 2008).

**42.** The literal translation of the Latin phrase *res ipsa loquitur* into English is "the thing speaks for itself".

**43.** *Delaware Coach Co.* at 73.

**GRANTED.** Therefore, it is ordered that U.S. Surgical Corporation, Tyco Healthcare Group, LP be **DISMISSED.** Plaintiffs' motion for partial summary judgment is moot. Additionally, for reasons expressed in this opinion, Ethicon's motion for summary judgment is **DENIED.**

**IT IS SO ORDERED.**